UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARVIN BELSER,

        Petitioner,

                                        CASE NO. 2:08-CV-11836
v.                                     HONORABLE DENISE PAGE HOOD

JEFF WHITE,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DENYING CERTIFICATE OF APPEALABILITY**

**I.      Introduction**

Michigan prisoner Marvin Belser ("Petitioner) has filed a petition for writ of habeas

corpus under 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional

rights. Petitioner was convicted of four counts of first-degree criminal sexual conduct ("CSC I"),

Mich. Comp. Laws § 750.520b, following a bench trial in the Wayne County Circuit Court in

2006 and was sentenced to concurrent terms of 29 to 60 years imprisonment.

In his pleadings, Petitioner asserts that he was denied his right to present a defense by the

trial court's limitation on his use of the victim's medical records during closing arguments and

that he was denied the effective assistance of trial counsel because counsel failed to object to the

admission of other acts evidence. Respondent has filed an answer to the petition contending that

it should be denied. For the reasons stated, the Court denies the petition for writ of habeas

corpus.

## II.     Facts and Procedural History

Petitioner's convictions arise from his sexual assault of his daughter, Genesis Underwood, in the summer of 2004 in Detroit, Michigan.  He was charged with multiple counts of criminal sexual conduct and child abuse involving Genesis, as well as her younger sister, Latrina Belser, but only convicted on charges involving Genesis.  The facts of those crimes, as set forth in the trial transcripts, are as follows:

In June or July of 2004, Genesis Underwood, who was 15 years old at the time of trial and 13 years old at the time of these crimes, moved from Montgomery, Alabama to Detroit, Michigan with her mother and siblings. Shortly after moving into her father's house on Quincy Street in Detroit, she was raped by her father.  *See* Waiver Trial Tr., June 20, 2006, pp 28-32. Petitioner asked Genesis if he could "eat her out." When she said no, "he took my phone and stuff away from me. And then I started crying. And he went in there and got the belt." He then hit her with the belt and told her to "shut up" and "stop crying." Because she would not allow him to perform cunnilingus on her, he said "he was gonna treat me different from the other kids." She replied "if he was to do something like that I didn't want to be aware of it." By that she meant she "didn't want to be conscious of what he was doing." Petitioner then went to get some drinks. *Id.* at 32-33.  Petitioner got "Smirnoff Green Apple Vodka and Corruna (sic)." *Id*. at 34-35.  Genesis drank "a lot" and became intoxicated. Petitioner then "took me in his room, and laid me on his bed, and he put his tongue in my vagina...after about five minutes, he penetrated me. He put his penis in my vagina." *Id.* at 36-37.

Later, Genesis' mother came home. She saw Genesis sleeping in her clothes and "puking." Her mother called the paramedics who took Genesis to the hospital, where she was

admitted for half the night. Genesis did not tell the people at the hospital or her mother about

what her father did to her because she "was scared." *Id*. at 37-39.

A few days later, Genesis got in trouble with her father for sending text messages. "He

told me to let him eat me out." By that she thought he meant "put his tongue in my vagina."

"Then I said no. And then he asked me again. And then I started crying. And then he said like in

a mean way like, 'Pull your pants down, now.'" She complied "cause I was scared." Petitioner

then performed cunnilingus and penetrated her vagina with his penis. *Id*. at 39-42. Genesis'

mother came home and asked her "what's wrong." Genesis told her there was a fight (leaving out

the sexual activity) and then had a psychogenic seizure. About two weeks later, Genesis told her

mother what had occurred. She also made a police report on July 17, 2004. Genesis then went to

live with her mother and brother on Sparta Street. *Id*. at 43-46.

In August of 2004, Genesis, having gotten information from her brother, met Petitioner in

an alley on West Warren. Petitioner brought a videotape camera with him and taped "him

fingerin' me. He put his finger in my vagina." The tape was admitted into evidence and played in

open court. Genesis identified herself, Petitioner, and Petitioner's voice on the tape. The tape

ended when Genesis had another psychogenic seizure. *Id*. at 49-51, 55. Genesis voluntarily rode

her bike to the alley but said she did so because " my brother had told him where we stayed" and

"I was scared." Genesis stated "he coulda' did anything." *Id*. at 56-57.

Petitioner testified in his own defense and denied the allegations. *Id*. at 72. Following

closing arguments, the trial court found Petitioner guilty of four counts of first-degree criminal

sexual conduct as to Genesis Underwood, but acquitted him of the other charges. *Id*. at 85-86.

The trial court subsequently sentenced Petitioner to concurrent terms of 29 to 60 years

imprisonment. *See* Sentencing Tr., July 24, 2006, pp 10-11.

Following sentencing, Petitioner filed a delayed application for leave to appeal with the

Michigan Court of Appeals raising the same claims presented on habeas review. The Michigan

Court of Appeals denied leave to appeal for lack of merit in the grounds presented. *See People v.*

*Belser*, No. 279483, 2007 (Mich. Ct. App. Oct. 30, 2007) (unpublished). Petitioner then filed an

application for leave to appeal with the Michigan Supreme Court, which was denied. *See People*

*v. Belser*, 480 Mich. 1137, 746 N.W.2d 78 (2008).

Petitioner thereafter filed the present habeas petition, raising the following claims as

grounds for relief:

> I.  The trial court improperly deprived the defense of the full opportunity to
> argue from the evidence and thus fully exercise the constitutional right to
> defend against the charges where the court would not allow counsel to
> refer to an admitted exhibit, yet referenced, and apparently relied upon,
> the exhibit in its verdict.
>
> II. Petitioner was denied his Sixth Amendment right to the effective
> assistance of counsel where counsel failed to object to highly prejudicial
> evidence of other bad acts.

Respondent, through the Michigan Attorney General's Office, has filed an answer to the petition

contending that it should be denied.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28

U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his habeas petition after the

AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d.

481 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694,  122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). "[T]he 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

5

the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

In this case, both of the Michigan appellate courts denied Petitioner leave to appeal in standard orders. Because those courts did not specifically address whether the alleged errors constituted a denial of Petitioner's federal constitutional rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of the claims is *de novo*. *See Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007); *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins*, 539 U.S. at 534).

IV.     **Analysis**

6

**A.     Habeas Claim I - Limitation on Closing Argument**

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in

refusing to allow defense counsel to refer to an admitted exhibit, the victim's medical records, to

impeach her credibility during closing arguments, even though the trial court subsequently relied

upon those records in rendering its verdict.  During closing arguments, defense counsel claimed

that the victim was not credible because she kept in contact with Petitioner despite the alleged

abuse and further claimed that the victim fabricated the charges because Petitioner took away her

cell phone.  Defense counsel then attempted to make an argument based upon the victim's

medical records, stating:

> And, also, since the medical records are in for her, if you look at the doctor's
> report for Genesis, it indicates that she complained of — here it is.  It's the final
> report for Genesis.  And she has a history of sexual molestations.

The prosecutor objected on relevancy grounds.  The trial court sustained the objection, stating:

"I'm not going to let you argue it."  Waiver Trial Tr., June 20, 2006, pp 77-78.  In rendering its

verdict, the trial court found that the victim's credibility was bolstered, in part, by the medical

records of her treatment for intoxication at the time of the charged offense in July, 2004.  *Id*. at p

84.  Petitioner asserts that he was denied the right to present a defense.  Respondent contends

that this claim is not cognizable and/or lacks merit.

The right of an accused to present a defense has long been recognized as "a fundamental

element of due process." *Washington v. State*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L.Ed.2d 1019

(1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject

to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140

L.Ed.2d 413 (1998). "A defendant's interest in presenting . . . evidence may thus bow to

accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotations

omitted). In determining whether the exclusion of evidence infringes upon a defendant's rights,

the question is not whether the excluded evidence would have caused the jury to reach a different

result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to

present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L.Ed.2d

636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L.Ed.2d

413 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L.Ed.2d

297 (1973).

Petitioner has not shown that the trial court's limitation on closing argument violated his

constitutional right to a fair trial. As an initial matter, the Court notes that Petitioner has failed to

present evidence that the victim's medical records support his claim. The record before this

Court merely indicates that a medical report showed that Genesis had "a history of sexual

molestations." Petitioner has failed to demonstrate how such information would have impugned

the victim or altered the trial court's credibility determination. There is no evidence before this

Court that the victim had a history of making false allegations of abuse and/or that the trial court

failed to properly consider all of the relevant evidence at trial. Conclusory allegations, without

evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 Fed.

Appx. 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 Fed. Appx. 440, 442 (6th Cir. 2003);

*Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Washington v. Renico*, 455 F.3d

722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient

basis to hold an evidentiary hearing in habeas proceedings).

The trial court's ruling did not deprive Petitioner of the right to present a defense nor

render his trial fundamentally unfair. The court's limitation on closing argument, particularly in the context of a bench trial, did not impede defense counsel's argument or trial strategy. *See, e.g., Burdis v. Withrow*, No. 00-10268-BC, 2002 WL 31748914, *6 (E.D. Mich. Nov. 19, 2002) (finding that trial judge's partial limitation on closing argument did not deprive habeas petitioner of right to present a defense). Petitioner had sufficient opportunity to cross-examine the victim about the validity of her allegations and to impeach her testimony and attack her credibility. Additionally, Petitioner testified on his own behalf and denied committing the charged offenses. Petitioner has failed to establish that the trial court's ruling denied him the right to present a defense or otherwise deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

### B.        Habeas Claim II - Ineffective Assistance of Counsel

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the introduction of the videotape that showed other bad acts which were not included in the indictment. The victim testified after the tape played in open court, identifying herself and Petitioner on the tape. The court found her testimony to be credible regarding the identification. Petitioner claims the videotape constitutes improper "other acts" evidence which should not have been admitted at trial such that counsel was ineffective for failing to object to its admission. Respondent contends that this claim is not cognizable upon habeas review and/or lacks merit.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that

9

counsel's performance was deficient. This requires showing that counsel made errors so serious

that he or she was not functioning as counsel guaranteed by the Sixth Amendment. 466. U.S. at

687. Second, the petitioner must establish that the deficient performance prejudiced the defense.

Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or

appeal. *Id*.

With respect to the performance prong, a petitioner must identify acts that were "outside

the wide range of professionally competent assistance" in order to prove deficient performance.

*Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at

689. The court must recognize that counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to

undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the [proceeding] cannot be relied on as having produced a just result."

*McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at

686).

Petitioner asserts that counsel was ineffective for failing to object to the introduction of

the "other acts" videotape evidence.  Petitioner, however, cannot establish that defense counsel

erred or that he was prejudiced by the lack of an objection because the videotape was admissible

10

under Michigan evidentiary law. Michigan Rule of Evidence 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Here, the videotape of Petitioner engaged in a sex act with his daughter (separate from the charged offenses) was properly admitted under state law to show the existence of a common scheme, plan, or system used by Petitioner in the continual sexual abuse of his daughter. *See, e.g., State v. Dobek*, 274 Mich. App. 58, 732 N.W.2d 546 (Mich. Ct. App. 2007) (holding that "the trial court did not err in allowing the victim to testify regarding other sexual acts between her and defendant" as evidence of a plan or scheme). Any objection by defense counsel to the videotape evidence would likely have been overruled by the trial court. Defense counsel cannot be deemed deficient for failing to make a futile objection. *See McQueen*, 99 F.3d at 1328. Because the videotape was properly admitted under Michigan law and the prosecution did not make an improper character or propensity argument, Petitioner cannot establish that defense counsel erred or that he was prejudiced by counsel's conduct so as to satisfy the *Strickland* standard. Habeas relief is not warranted on this claim.

**V. Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS SO ORDERED**

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: July 30, 2010

I hereby certify that a copy of the foregoing document was served upon Marvin Belser, Reg. No. 352904, E. C. Brooks Correctional Facility, 2500 S. Sheriden Dr., Muskegon, MI 49444 and counsel of record on July 30, 2010, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager
